Ashburn, J.
The record in this case presents but a single question for the decision of the court, namely: Where there is a joint judgment against two defendants, and both appeal to the Court of Common Pleas, and in that court judgment is rendered against one of the defendants only, is the surety of both, on the undertaking for appeal, liable for the payment of such judgment ?
The District Court answered this question in the negative, and, we think, correctly. No principle is more firmly .settled in this state than this, that sureties may stand on the very terms of a statutory bond or undertaking. So ■clearly has this doctrine been announced and acted upon, that it maybe regarded as entering into the condition of such an undertaking, that it will not be extended by the courts beyond the necessary import of the words used. It will not be implied that the surety has undertaken to do more, ■or other, than what is expressed in such obligation. In our judgment, it would not be wise, by reason of anything we find in this undertaking, or the facts as shown by the *502 record, to make innovation upon this recognized rule of the law. When applied, in some cases, the rule may appear harsh or even defective, yet it will be more conducive to the general welfare to follow its lead than to unsettle the rule.
This undertaking reads : “Now, therefore, I,L. H. Pike, of Toledo, do hereby, pursuant to the statute in such ease made and provided, promise and undertake that the said appellants, if judgment be adjudged against them on the appeal, will satisfy such judgment,” etc. The record shows that Joseph and Sabina Pfeifer appealed jointly from a judgment rendered against them jointly; and Pike promised and undertook if suck a judgment was rendered against them in the appellate court, he would pay suck judgment if tkey failed to do so. The length and breadth of his promise in the undertaking on appeal was that he would pay any judgment rendered against both of them— not separately, but jointly. He can not, then, be held for the separate default of Joseph. To hold differently would be enlarging the terms and changing the conditions of the undertaking, thereby virtually making, by construction, a new undertaking for the parties, and holding Pike responsible for conditions not in his contract.
In the language of eminent judges of our own state,. “ the liability of a surety in an undertaking is not to be extended by implication beyond the terms of his contract.” And while “ it has been the uniform object of our courts to support bonds executed under the provisions of the law, where, by a reasonable interpretation, such bonds can be made to meet the intention for which they were required to be taken,” yet, in all cases where interpretation becomes necessary, the “ undertaking is to receive a strict interpretation, and not to be extended beyond the fair scope-of its terms.”
In cases where the terms of the undertaking are so explicit that interpretation is not required, courts will not undertake to render that more clear to the mind which is-already positively clear to the understanding. In a judicial *503 sense, the office of interpretation is to make plain that which is not obvious. "Where, however, the conditions of the undertaking, as in this ease, are obvious, no work of interpretation is required. Here the work of the jurist is to apply the undertaking to its proper subject-matter, and then let it speak for itself. Thus applied, it plainly says : Pike will pay any joint judgment rendered in the appellate court — auy such judgment as shall be rendered there against Joseph and Sabina Pfeifer, but not one that shall be rendered against either alone.
The purpose of the condition in the undertaking is to define and limit the liability of the surety in case of the default of the principal obligor. And when so defined and limited, the surety may demand that he stand upon the words of the undertaking. I will adopt as my own the comprehensive language of Judge Read in the case of the State v. Medary, 17 Ohio, 565 : “ The bond speaks for itself, and the law is that it shall so speak, and that the liability of the sureties is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable, nothing can. There is no construction, no equity against sureties. If a bond can not have effect according to its exact words, the law does not authorize the court to give it effect in some other way in order that it may prevail.” This doctrine applies as well to statutory undertakings as it does to bonds. Pike undertook to respond to-a joint judgment in the appellate court, and to no other, on default of Joseph Pfeifer and Sabina Pfeifer doing so.
It is thought by "a member of the court that the ruling in the case of Bently et al. v. Dorcas et al., 11 Ohio St. 398, is in conflict with our holding in this case. We think not. The facts in the respective cases are such that each may rest upon its own merits. The case in 11 Ohio St. was a joirit and several bond, with a condition joint in form, given on an appeal from a decree in chancery involving a trust fund. The condition was that “ if Lake, Bently, Barkly, and Bushnell shall pay the full amount of the condemnation in *504 the District Court, and costs in case, a decree shall be .rendered therein in favor oí the appellees,” etc. They made themselves jointly responsible to pay any decree in favor of the appellees, and the court in holding them all liable simply required them to stand upon the terms of their bond — the court gave the bond application in accordance with its express condition and legal scope. The undertaking we have under consideration is not conditioned, as that was, to pay a judgment in favor of appellees, but to pay any judgment that should be adjudged against appellants.
It is thought the rulings in 3 Keys (N. Y.) 636 ; 17 How. Pr. 394, and 24 Ib. 467, are in conflict with the ruling in this case. The decisions in these cases are made upon the terms of the New York statute providing for appeal and stay of execution provided for in the same undertaking, and that statute is essentially different in its phraseology from our statute providing the terms and conditions of an undertaking for an appeal. They are, touching the question under consideration, giving construction to section 335 of the New York code, which reads : “If the appeal, be from a judgment directing the payment of money, it shall not stay the execution of the judgment unless a written undertaking be executed on the part of the appellant by at least two sureties to the effect that the judgment appealed from, or any part thereof, be affirmed, the appellant will pay the amount directed to be paid by the judgment, or the part of such amount as to which the judgment shall be affirmed, if it be affirmed only in part.”
This section is construed by the New York courts, and in 17 Howard the court, by Brown, J., says : “ The part of the judgment referred to in section 335 of the code and in the written undertaking is not limited to the money which is the subject of the recovery. The thing to be recovered, whether money or other personal property, is a part of the judgment, and so are the person-or persons from whom it is recovered. Both the money adjudged to the plaintiff', and the person or persons who are.adjudge.d to pay.it are material and essential parts of the judgment; and *505 a judgment is affirmed in fart and reversed in fart when it is affirmed as to one and reversed as to the other.”
Such a construction is consistent with the peculiar terms of the New York statute above quoted, and the conditions of the undertakings for appeal had in virtue of it. But the terms of our statute are so unlike the New York statute, that a decision construing the one can afford no direction in construing the other. Upon our examination of these cases, we find nothing that militates against the conclusion we have arrived at.

Judgment of the District Court affirmed.

Scott, Chief Judge, Day, and Wright, JJ., concurred.